DOLLNER, POTTER & Co., plaintiffs in error, vs. BENJAMIN F. WILLIAMS, defendant in error.

[1.] If one, after selling personal property, retains possession, and subsequently, and while in possession, executes a mortgage to a third person, to secure a debt, the lien of the mortgage must prevail over the previous sale, if the mortgage was not fraudulent, and the mortgagees had no notice of the former sale at, or previous to their taking the mortgage.

[2.] The declarations of the mortgagor at, and previous to the execution of the mortgage, the mortgagees not being present, and assenting to such statements, are inadmissible to prove notice to them of the former sale or fraud in the mortgage.

[3.] It is error in the Court to charge the jury on a state of facts not in proof.

[4.] It is irregular in the Judge of the Court below in signing the certificate to the bill of exceptions required by law, to incorporate therein a statement of any *additional* fact or evidence not included in the bill of exceptions, or brief of evidence, filed in support of a motion for new trial; nor can this Court in passing upon the questions presented, consider such addenda as a part of the record.

Trover, in Charlton Superior Court. Tried before Judge Cochran, at April Term, 1859.

This was an action of trover, brought by Benj. F. Williams, against Harold Dollner, Gilbert Potter, and John Camerden, partners, under the name of Dollner, Potter & Co., to recover a turpentine still and fixtures. Service of the writ was effected on Potter alone, and the action proceeded against him, under the provisions of the statute in such case made and provided.

*Brief of testimony.*

The plaintiff introduced the following testimony :

A bond for titles from Enoch Hannum to the plaintiff, dated the 12th day of May, A. D., 1855, upon proof of the hand-writing of the obligor.

*John Brooks,* being sworn, testified as follows: "That he had a conversation with Enoch Hannum at the time of the execution of a certain mortgage by said Hannum in favor of Dollner, Potter & Co., which he thinks was in June, 1855; that Hannum then said he had sold the turpentine still to the plaintiff; that Hannum asked him to go for a lawyer to draw a trust deed or mortgage for him (Hannum) to Dollner, Potter & Co., of all his lands, wagons, flatboats and other property, in order to give himself time to pay his debts, by preventing his other creditors from sacrificing his property under attachment or other process; that he found no lawyer, but got a form book, from which was taken the form of a mortgage which Hannum then drew and executed in favor of Dollner, Potter & Co.; that he included in the said mortgage the property he said he had sold to the plaintiff; that at a subsequent time he (the witness) had a conversation with defendant about the plaintiff's claim, but does not remember what it was. That in the spring of 1856, but not before, he (witness) saw plaintiff in possession of the place where the still was; plaintiff was there with his family.

Dollner, Potter & Co., vs. Williams.

The still was worth, to the best of his knowledge, from $1,000 to $1,500; and might be worth $200 per annum, but as to that the witness can hardly form an opinion."

On the cross-examination, the witness said: "That in his said conversation with Hannum, Hannum said his object in executing the mortgage was not to defraud creditors, but to secure them; that he was then indebted to Dollner, Potter & Co.; that neither defendant, nor any one of the firm, was present at said conversation, or at the execution of the mortgage; that he (the witness) did not see defendant until the spring of 1856; that he does not know that defendant, or any one of the firm, had any knowledge of the conversation with Hannum above mentioned, or of the execution of the mortgage, until he (the defendant) was in this county in the spring of 1856.

*Curtis R. Hinton*, being sworn, testified as follows: "He removed the still from Burnt Fort at the instance of the defendant; he found it on the place where the plaintiff was living; he removed it to Camp Pinckney, in this county, whence he thinks it was shipped to New York. The still was worth from $1000 to $1,500; its yearly use was worth nothing hardly, as it was out of order, the bottom being cracked. He thinks what he has stated took place in the latter part of 1856. Plaintiff may have been on the place seven or eight months."

On cross-examination the witness said: "The still had been sold by the Sheriff at the door of the Court House in this county. The plaintiff was present at the sale, but did not forbid it, or make any objection to it, or set up any claim to it, or give any notice that he claimed it, as witness heard; that no such notice was given by any other person; that the defendant bought the still at said sale, and employed him (the witness) to remove it; that the plaintiff was present when (he witness) removed the still, and asked only by whose orders he removed it, but made no objection to its removal, and set up no claim to it."

The plaintiff here closed his case, and the defendant offered the following testimony:

A mortgage of said still from Enoch Hannum to Dollner, Potter & Co., dated the 7th day of June, 1855.

The affidavit of the defendant, as one of said firm, to foreclose the same.

The execution in pursuance thereof, with the entry thereon.

The Sheriff's deed to Dollner, Potter & Co.

*John E. Bryant*, being sworn, testified as follows: "That he sold the still in question as Sheriff of said county, as recited in his deed to the purchaser; that he sold it himself; that the plaintiff was present, and quite near him, and made no objection to the sale, and gave no notice of any claim to the still, and set up no claim to it, though he knew what was going on; the still sold was lying at Burnt Fort, and was purchased by the defendant for about $200, and delivered to him in pursuance thereof; the levy was made by his predecessor in the office of Sheriff."

*Stephen McCall*, being sworn, testified as follows: "That he knew the still lying at Burnt Fort, once owned by Enoch Hannum, but knows nothing of the value of it; was present at the sale of the still by the Sheriff, and plaintiff was there; heard no notice given to the public of any claim to the still on the part of any person; plaintiff made no objection to the sale, and set up no claim to it. He knows the defendant; he is a merchant doing business in the city of New York, in partnership with a Mr. Dollner and a Mr. Camerden."

On the cross-examination, he said "he never heard the defendant name the still in connection with the plaintiff."

*Erasmus D. Tracy*, being sworn, testified as follows: "That he was present when the still was sold; it was sold as a still lying at Burnt Fort, and as the property of Enoch Hannum; it was so announced by the Sheriff; plaintiff was there, but gave no notice of any claim of his to the still, set

up no claim to it, and made no objection to the sale, so far as witness heard."

Here the defendant closed his case, and *John Brooks*, being recalled by the plaintiff, said " he did not know whether the mortgage shown him was the mortgage Hannum spoke of executing, as stated in his examination in chief, but that it contained the articles Hannum spoke of including in it." He repeated what he stated then as to his conversation with Hannum, *and added that Hannum* said he wished to leave the State, and desired to make a trust deed or mortgage to some one, to prevent creditors from attaching and sacrificing his property; that his object was not to defraud his creditors, but to secure them; and that he included the property sold to Williams, in order to secure him also; that he preferred Dollner, Potter & Co., as he owed them; he also stated that when he saw defendant in the spring of 1856, he (the defendant) had heard of plaintiff's claim, and said he would try to compromise with him; this was after the mortgage but before the sale. Witness spoke to him of it, and he to witness."

The defendant objected to the testimony of John Brooks, the first witness for the plaintiff, as to the declarations of Hannum, concerning the sale of the still to plaintiff, as tending to alter, vary and contradict the written instrument; and also as to the declarations of Hannum, concerning his intentions in executing the mortgage to defendant.

The Court overruled the objection, and admitted the testimony, and defendant excepted.

The jury found for the plaintiff; whereupon, counsel for defendants moved for a new trial, on the following grounds:

1st. Because his Honor erred in admitting in evidence the sayings of Enoch Hannum, before the execution of the

mortgage, to the witness, John Brooks, as to his having sold the still to the plaintiff.

2d. Because his Honor erred in admitting the testimony of the same witness, when he was recalled after the defendant had closed his case, to prove by the sayings of Enoch Hannum the intention of the said Hannum in making the mortgage to Dollner, Potter & Co., which had been read to the jury by the defendant.

3d. Because his Honor refused to charge the jury, as requested by counsel for defendant, that the jury were not to consider the testimony given, as to the sayings of Hannum at the time of the execution of the said mortgage, unless the defendant was present when such sayings were made, and acquiesced in the same, or afterwards acquiesced therein.

4th. Because his Honor refused to charge, as requested by counsel for defendant, that the bond for title given by Hannum to the plaintiff was but the evidence of a contract to be afterwards executed, and was no bar at law to the conveyance, by the obligor, of the property mentioned in the bond, or the execution of a mortgage thereon.

5th. Because his Honor charged the jury that it was not necessary for the plaintiff to prove that he had paid for the still in order to make out his title to the same, if sale and possession of the same were proved.

6th. Because his Honor refused to charge, as requested by counsel for the defendant, that if the plaintiff had not paid for the still in pursuance of the said bond, the said mortgage was a valid lien on the said still.

7th. Because his Honor refused to charge, as requested by counsel for the defendant, that if the defendant had no notice of the bond for titles, the said mortgage was a valid lien on the still; but did charge, on the contrary, that though it might have been a valid lien as against all other persons, it was not as against the said plaintiff, if there were proof of sale and delivery before the mortgage.

8th. Because his Honor, in charging as requested by coun-

Dollner, Potter & Co., vs. Williams.

sel.for the defendant, that if the plaintiff stood by in silence at the Sheriff's sale and did not forbid the sale, or give notice of his claim, or take any steps to assert it, he was thenceforth barred from ever afterwards asserting any claim he might have had; qualified said charge by saying that he was not so barred as against the defendant, if the defendant had notice of the plaintiff's claim before the sale.

9th. Because his Honor refused to charge, as requested by counsel for defendant, that notice to the defendant of any claim set up by the plaintiff subsequently to the mortgage, even if prior to the sale, did not affect his rights under the mortgage.

10th. Because his Honor charged that the title of the defendant rests on the purchase at the Sheriff's sale, and not on the mortgage, which vests a lien and not title.

11th. Because his Honor charged that if the mortgage was affected with fraud, the purchase at the Sheriff's sale in pursuance of it vested no title; without qualifying the said charge by instructing the jury that knowledge of and participation in the fraud by the defendant was necessary to affect his rights under the mortgage.

12th. Because the charge of his Honor was contrary to law.

13th. Because the verdict of the jury was contrary to law,

14th. Because the verdict was decidedly and strongly against the weight of evidence.

15th. Because there was no evidence whatever to justify the verdict.

The Court overruled the motion for a new trial, and defendant excepted.


LAWTON & BASSINGER, for plaintiffs in error.

*By the Court.*—LYON J. delivering the opinion.

Was the Court right in permitting the witness, John Brooks, to testify to the statements made by Enoch Hannum at the time of the execution of the mortgage by him to Dollner, Potter & Co.? We think not.

At the time of the execution of this mortgage on the property in controversy by this issue, the mortgagor was in the possession of the same, notwithstanding he had previously sold and made a written bill of sale, or agreement in writing, for title thereto, to the defendant in error, Gilbert Williams.

As between Enoch Hannum and Gilbert Williams, this sale was good, and could have been enforced by Williams; but without a delivery of the property to Williams under that agreement, it was not valid as against the mortgage lien of the plaintiffs in error, Dollner, Potter & Co., which attached thereto immediately on the execution of the mortgage, while Hannum was in possession of the same, and before the title of defendant in error had completely vested by a reduction of the property to his possession; unless the plaintiffs in error, Dollner, Potter & Co., had notice at or previously to the execution of the mortgage, of the former sale to the defendant in error, or, unless the mortgage was fraudulent; that is, not taken by Dollner, Potter & Co. in good faith for the purposes therein specified.

To overcome this superior lien, or better right, of the plaintiffs in error to the property, it was incumbent on the defendant in error, Williams, to affirmatively show, either that Dollner, Potter & Co., had notice at the time of, or previously to the execution of the mortgage, of the former sale to Williams, or that the mortgagees took this mortgage in bad faith or fraudulently.

The declarations of Enoch Hannum, the mortgagor, as testified to by the witness, John Brooks, at and previously to the execution of the mortgage, were offered to prove one or both of these facts; they were not admissible for either

purpose, that is, to prove notice, or show fraud, for the reason, that the persons to be affected by such declarations, Dollner, Potter & Co., were not present, and assenting to the truth of such statements, which would be necessary before they would be evidence against them; hence the Court ought to have rejected these statements. It was argued by counsel for defendant in error, that, inasmuch as Dollner, Potter & Co. were not present at the execution of the mortgage, but that Hannum had the mortgage prepared, and executed it himself in their absence, he is to be regarded as their agent. Not so. For all that we know, this mortgage was prepared and executed by Hannum, under an express agreement between himself and the mortgagees, that he would do so to secure his indebtedness to them, and in the absence of any explanation whatever of the circumstances, we would presume such to be the fact. Now, it would be strange, if one, in the literal fulfilment of his agreement with these parties in executing this mortgage, could charge it at the time, by his mere declarations, with such notice, or fraud, in the absence of those to whom the mortgage was given, as would defeat the object of the deed entirely; for this would be the effect of the admission of this sort of evidence. See what injury might result from it. Concede that Hannum was indebted to Dollner, Potter & Co. in this large amount, looking on this mortgage as ample security for their debt, they take no steps to coerce its payment, relying upon this property as their only security; and when they attempt to avail themselves of its benefits, they are met and defeated by statements of which they were ignorant, and which had no foundation in truth.

It is urged again, that they are admissible as parts of the *res gestæ;* that is true, and it would be for that reason that they would be admissible against the deed itself, if Dollner, Potter & Co. had been present, and admitted the truth of the statement, or if it was important to enquire into Hannum's reasons for making this mortgage, but it is not; for however

fraudulent may have been his intent in making the mortgage, yet if Dollner, Potter & Co. were no parties to such fraudulent intent, but took the mortgage in *good faith*, *to secure* a *bona fide* debt from Hannum to themselves, then the deed is good, and not affected by the fraud of Hannum. So the Court erred in admitting this evidence against the objection of counsel for plaintiff in error, and ought to have granted a new trial in said cause, *for the reasons given above*, on the first, second, third, fourth, ninth, tenth and thirteenth grounds of the motion for a new trial.

There was error in the charge of the Court as made in the fifth ground of new trial, for the reason that there was no evidence of possession of the property in defendant in error before the Court, previous to the lien of mortgage, to support such charge.

And in the charge as made in the seventh ground, because there was no proof of the delivery before the mortgage.

The charge as made in the eleventh ground of new trial was erroneous, because there was no evidence of any fraud in the mortgage, (the statements of Hannum, as testified to by Brooks, being out of the way,) and that, therefore, was a question that ought not to have been left to the jury.

The Court had under consideration the charge of the Court below, set out in the eighth ground of new trial, as to the effect of the defendant in error, standing by in silence at the Sheriff's sale of this property under the mortgage *fi. fa.*, and when the same was purchased by plaintiffs in error, and not forbidding the sale, giving notice of his title, or taking any steps to assert it. This question we do not now decide because counsel for defendant in error have requested us not to do so, and for the additional reason that there is other property involved in the litigation, not now before this Court, between these parties, that may be affected by a decision of this point, and as that question has been but slightly argued, we leave that an open question.

A question of practice was made and argued in this case,

which grow out of this fact:   The presiding Judge, in sign-ing this bill of exceptions, made an addenda of certain other evidence, which he certifies was had on the trial, but which was not incoporated in the brief of evidence, which had been previously approved by the Court, and filed to support the motion for new trial.

Counsel for plaintiffs in error insist that this additional evidence incorporated in the Judge's certificate to bill of ex-ception was irregular, and ought not to be considered by this Court, as a part of the record of the cause in the Court be-low, and we agree with the counsel.   The Court below in considering a motion for new trial, must confine itself to the brief of evidence, as allowed and filed, and, in signing the certificate required by law, cannot add any additional fact, not incorporated in the bill of exceptions or brief of evidence, and when he does so, this Court can not consider it as form-ing any part of the record.   It is proper here to add, that the additional facts certified to by the Judge, if regularly before the Court, could not possibly have affected our judgment.

*Judgment reversed.*